


FILED
Jun 27 2018, 2:42 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 46S04-1711-CR-701

## State of Indiana
*Appellant (Plaintiff below),*

—v—

## John B. Larkin
*Appellee (Defendant below).*

---

Argued: December 19, 2017 | Decided: June 27, 2018

Appeal from the LaPorte Circuit Court,
No. 46C01-1212-FA-610
The Honorable Patrick C. Blankenship, Special Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 46A04-1607-CR-1522

---

**Opinion by Justice David**

Chief Justice Rush, Justice Massa, Justice Slaughter, and Justice Goff concur.

**David, Justice.**

Following the death of his wife, John Larkin was charged with voluntary manslaughter. However, this charge was later dismissed because both of the lower courts found that: 1) the Criminal Rule 4(C) period within which to bring Larkin to trial had expired and the delays in bringing him to trial were not attributable to him; and 2) the prosecutorial misconduct in this case required dismissal. For reasons discussed herein, we disagree with the lower courts on both issues. Accordingly, we reverse and remand for the trial court to hold a hearing or proceed to trial pursuant to this Court's holding in *State v. Taylor*, 49 N.E.3d 1019 (Ind. 2016).

## Facts and Procedural History

In December 2012, police were dispatched to the home of John and Stacey Larkin for a reported shooting. Stacey Larkin sustained two fatal gunshot wounds during a domestic dispute involving her husband, John Larkin. Police took Larkin into custody for questioning, and he invoked his right to counsel. The police interrogated him anyway. Larkin's statements to police during those sessions were later suppressed.

While the State's preliminary charge was murder, Larkin agreed to speak with police if the State would consider only charging him with manslaughter. The police so charged Larkin, and then conducted a recorded interview.  During a break, police left Larkin alone with his attorney, but kept the video recording equipment running, capturing Larkin and his attorney's privileged communications. Larkin and his attorney discussed various aspects of the case including insurance, motivation and motive, possible charges, filing for divorce, the children, conditions of bond, the funeral, possible defenses, and the sequence of events on the evening of the shooting. Police and prosecutors viewed the video and, therefore, saw and heard Larkin's privileged discussion with counsel.  A court reporter even transcribed the discussion and distributed it to the prosecutor's office. Nearly one year later (December 2013), the

State disclosed to Larkin that it had eavesdropped on privileged communications between him and his attorney.

In March 2014, following several continuances, the parties stipulated that after November 5, 2014, the State would have 90 days to try Larkin pursuant to Indiana Criminal Rule 4(C). Thereafter, in July 2014, Larkin moved to dismiss the voluntary manslaughter charge, citing police and prosecutorial misconduct that deprived him of his Sixth Amendment right to effective counsel. He later moved to disqualify the LaPorte County Prosecutor's Office on the same grounds and requested a special prosecutor. He also filed another motion to dismiss in September 2014, alleging that the State's lead detective conspired to obstruct justice by having another officer change his statement regarding that officer's prior interaction with Stacey Larkin. In October 2014, the trial court denied Larkin's motions, but it suppressed: 1) statements Larkin made to police after he invoked the right to counsel but before counsel arrived; and 2) the recorded conversation between Larkin and counsel.

At Larkin's request, the trial court certified for interlocutory appeal the denial of Larkin's motion to disqualify the prosecutor's office, and stayed the proceedings pending resolution from the Court of Appeals.

In September 2015, the Court of Appeals dismissed Larkin's appeal as moot since LaPorte County elected a new prosecutor in November 2014. *Larkin v. State*, 43 N.E.3d 1281, 1286-87 (Ind. Ct. App. 2015). The court's opinion explained that it addressed only the LaPorte Prosecutor's Office as a whole and did not evaluate whether individual prosecutors should withdraw from the case. *Id.* at 1287. The court then opined, "if requested by Larkin, the trial court should consider whether disqualification of [two deputy prosecutors] would be appropriate in this situation." *Id.* The Court did not certify its decision until November 20, 2015.

In the six weeks between when the Court of Appeals issued and certified its opinion, the State moved to withdraw the two deputy prosecutors, Neary and Armstrong, named in the Court of Appeals opinion. The State also moved for the appointment of a special prosecutor. The trial court granted all motions. Also during this time (in

October 2015), the trial court judge recused himself and the County Clerk appointed Judge Thomas Alevizos to preside over the case going forward.

Thereafter, in December 2015, Larkin moved to disqualify Judge Alevizos, alleging the judge had a conflict of interest. Following a hearing, Judge Alevizos found no conflict that jeopardized his impartiality, but nonetheless recused himself to save the matter from further delays. The Clerk sought replacements, but four other judges in the county either declined the appointment or recused themselves. On February 29, 2016, Pulaski County's Judge Patrick Blankenship accepted the appointment.

On March 28, 2016, citing Rule 4(C), Larkin moved for discharge. He orally renewed that motion in an April 7, 2016 hearing. During that same hearing, the court and parties discussed possible trial dates, should the court deny Larkin's 4(C) motion. The court and State proposed trial dates in early May 2016, but Larkin declined those dates. Larkin agreed to a June 20, 2016 trial date. The court clarified on the record that Larkin waived his 4(C) argument regarding the June trial date to the extent he already made a record that he believed the period had run.

In May 2016, Larkin filed another motion for discharge under Criminal Rule 4(C). He also again moved to dismiss the voluntary manslaughter charge, this time arguing the police and prosecutorial misconduct made a fair trial impossible. The court held a hearing on Larkin's motion to dismiss on June 9, 2016. Due to last-minute scheduling, the State appeared via telephone. The State argued against dismissal, citing the denial of Larkin's first motion to dismiss back in 2014. Alternatively, pursuant to this Court's opinion in *Taylor v. State*, 49 N.E.3d 1019 (Ind. 2016), the State requested another hearing to present evidence to prove Larkin did not suffer prejudice from the State's prior misconduct. The trial court denied that request and on the same day and granted Larkin's motions, discharging him pursuant to 4(C) and dismissing the voluntary manslaughter charge.

The State appealed, raising two issues: 1) whether the trial court erred in granting Larkin's 4(C) discharge motion; and 2) whether the trial court erred in granting Larkin's motion to dismiss. In a split published opinion, the Court of Appeals affirmed on both issues. *State v. Larkin*, 77 N.E.3d 237

(Ind. Ct. App.), *reh'g denied* (Aug. 25, 2017)("*Larkin I*"), *transfer granted, opinion vacated*, 94 N.E.3d 700 (Ind. 2017). Judge Barnes dissented; he would have reversed and remanded on both issues. The State sought transfer which we granted, thereby vacating the Court of Appeals' opinion. Indiana Appellate Rule 58(A). Additional facts are set forth below.

## Standards of Review

When evaluating a Criminal Rule 4 motion for discharge, "in cases where the issue is a question of law applied to undisputed facts, the standard of review—like for all questions of law—is de novo." *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013). However, in cases where a trial court makes a factual finding of congestion or emergency based on disputed facts, the standard of review for appellate courts is not abuse of discretion, but the clearly erroneous standard. *Id.* at 1040.

We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017). A trial court abuses its discretion when it misinterprets the law. *Id*.

## Discussion and Decision

## I.   Discharge pursuant to Criminal Rule 4(C)

The State bears the burden of bringing the defendant to trial within one year. *Bowman v. State*, 884 N.E.2d 917, 919 (Ind. Ct. App. 2008), *trans. denied*. Rule 4(C) provides a defendant may not be held to answer a criminal charge for greater than one year, unless the delay is caused by the defendant, emergency, or court congestion. *Curtis v. State*, 948 N.E.2d 1143, 1148-49 (Ind. 2011).

A defendant extends the one-year period by seeking or acquiescing in delay resulting in a later trial date. A defendant waives his right to be brought to trial within the period by failing to raise a timely objection if, during the period, the trial court schedules trial beyond the limit. However, a defendant has no duty to object to the setting of a belated trial date if the setting occurs after the year has expired.

*Pelley v. State*, 901 N.E.2d 494, 498-99 (Ind. 2009) (internal citations omitted).

In this case, the parties stipulated that the State would have 3 months from November 5, 2014 to try Larkin. Trial was ultimately set for June 20, 2016 after an interlocutory appeal and a motion for change of judge. At issue is whether the delay as a result of the interlocutory appeal and the motion for change of judge are attributable to Larkin or not.

## A. Interlocutory Appeal

In *Pelley*, this Court said, "[w]hen trial court proceedings have been stayed pending resolution of the . . . interlocutory appeal, the trial court loses jurisdiction to try the defendant and has no ability to speed the appellate process." 901 N.E.2d at 500. *See also Wood v. State*, 999 N.E.2d 1054, 1063 (Ind. Ct. App. 2013) (citing *Pelley* for the principle that "in the absence of jurisdiction in the trial court, the Criminal Rule 4(C) . . . was tolled").

As for when the trial court resumes jurisdiction, Indiana Appellate Rule 65(E), provides in relevant part: "[t]he trial court . . . and parties shall not take any action in reliance upon the opinion or memorandum decision until the opinion or memorandum decision is certified." Case law clarifies that if a trial court acts before certification, the action is considered a nullity—as if the trial court lacked jurisdiction. *Hancock v. State*, 786 N.E.2d 1142, 1143 n.1 (Ind. Ct. App. 2003) (explaining that trial court's action pre-certification was "premature and should be considered as a nullity"); *Jallaili v. National Bd. of Osteopathic Medical Examiners, Inc.*, 908 N.E.2d 1168, 1176 n.4 (Ind. Ct. App. 2009) (labeling a motion filed before certification

"premature"); *Montgomery v. Montgomery*, 59 N.E.3d 343, 355 n.8 (Ind. Ct. App. 2016) ("We remind the parties and the trial court that no action should be taken in reliance on [the Court of Appeals] opinion until it is certified as final under Indiana Appellate Rule 65(E)").

Here, *Larkin I* was not certified until November 20, 2015, but prior to that, the State filed several motions including one for appointment of a special prosecutor. Pursuant to *Pelley* and App. R. 65, the trial court did not yet have jurisdiction. Nevertheless, the Court of Appeals majority found that the trial court reassumed jurisdiction and the State submitted itself to the trial court's jurisdiction due to a "constructive" lift of the stay when the State moved for appointment of a special prosecutor. It found that the purpose of App. R. 65 was satisfied by the trial court and the State's actions; that is, they were acting in accord with the decision being final. But as Judge Barnes noted in his dissent, there are three problems with this: 1) any action taken by the court prior to certification was potentially voidable; 2) the parties could have petitioned for transfer; and 3) the majority's outcome punishes the State for trying to move the case forward prior to the stay being lifted. The State further notes that any date prior to the date of certification is an inappropriate measure of when the clock restarts for 4(C) purposes, as it injects uncertainly and allows for potential game-playing by defendants.

We agree with the State and Judge Barnes that until the interlocutory appeal was certified, the trial court did not have jurisdiction. As such, the period of delay during the pendency of Larkin's interlocutory appeal through the time the Court of Appeals opinion was certified is chargeable to Larkin.


## B. Motion for Change of Judge

On November 23, 2015, Larkin moved for a change of Judge. Judge Alevizos took the matter under advisement and later recused himself. Then, several special judges declined appointment until finally, on February 29, 2016, Judge Blankenship accepted appointment.

This Court has held that "a delay occasioned by a defendant's filing of a motion for change of judge is chargeable to him and that the time begins to run anew when the new judge qualifies and assumes jurisdiction." *State ex rel. Brown v. Hancock County Superior Court*, 372 N.E.2d 169, 170 (Ind. 1978); *See also*, *Wedmore v. State*, 143 N.E.2d 649, 650 (Ind. 1957); *State v. Grow*, 263 N.E.2d 277, 278 (Ind. 1970). As Judge Barnes notes in his dissent, the delay between the filing of the motion and appointment of a qualified judge in *Grow* was six months and in *Brown*, sixteen months; both chargeable to the defendant. Thus, under this line of cases, Larkin should be charged with the delay from the filing of his motion until Judge Blankenship accepted appointment.

However, the Court of Appeals majority found *Harrington v. State*, 588 N.E.2d 509 (Ind. Ct. App. 1992), *disapproved by Cook v. State*, 810 N.E.2d 1064 (Ind. 2004) dispositive. In *Harrington*, the defendant moved for a special prosecutor because the current prosecutor had a conflict of interest (the prosecutor had previously represented the defendant). 588 N.E.2d at 510. A 317-day delay resulted from the defendant's motion. When the defendant moved for discharge under Criminal Rule 4(C), the State argued the delay should be charged to the defendant, since he made the special prosecutor motion. *Id.* at 510-11. Harrington countered that the delay should be charged to Rule 4(C) since the prosecutor knew of the conflict and it would be unfair to charge the delay to him. The Court of Appeals concluded the delay was attributable to the State because "a defendant should not be forced to choose between a speedy trial and a fair trial as a result of the prosecutor's failure to identify and cure his conflicts." *Id.* at 511.

In *Cook*, this Court disapproved *Harrington*. We held "delays caused by action taken by the defendant are chargeable to the defendant regardless of whether a trial date has been set." 810 N.E.2d at 1067. We also expressly disapproved a string of cases (including *Harrington*) to the extent they were inconsistent with that holding. *Id.* The Court of Appeals majority here relied heavily on *Harrington's* language that a defendant should not be forced to choose between a fair and speedy trial. Admittedly, *Harrington's* language about choosing between a fair and speedy trial was not explicitly disapproved in *Cook*.

However, there are a few problems with applying *Harrington* in this case.  First, adopting this approach would allow for a defendant to file for change of judge preventing the case from moving forward but allowing the 4(C) period to run.  Just as interlocutory appeals toll the 4(C) period despite who filed because the case cannot practically move forward, the same is true when a motion for change of judge is filed.

Also, the Court of Appeals majority assumes that Judge Alevizos' conflict that caused his recusal was something he should have just known from the outset.  It's not clear that this is the case.  While he previously presided over a matter involving Larkin's sister and children and the outcome was less than desirable for Larkin's sister, we presume our trial judges are unbiased. *Patterson v. State*, 926 N.E.2d 90, 93 (Ind. Ct. App. 2010).  Further, practically speaking, there are times when it will take time to find a suitable special judge depending on the circumstances, and it's not clear why this delay is not akin to court congestion. Accordingly, we apply *Cook* and find that the delay in finding a special judge is attributable to Larkin.  Because the delays that occurred as a result of Larkin's interlocutory appeal and his motion for change of judge are attributable to him and he agreed to a June 2016 trial date in May, prior to expiration of the 4(C) period, he is not entitled to discharge pursuant to Criminal Rule 4(C).

## II.   Motion to dismiss due to inability to get a fair trial

### A.  The State committed misconduct.

In this case, there is no dispute that the State committed misconduct and on numerous occasions.   First, police continued to question Larkin after he invoked his right to counsel.  Then, Larkin's private conversation with his attorney was recorded and listened to by several individuals at the prosecutor's office.  The situation was compounded when the conversation was transcribed and further distributed.  Additionally, there is evidence in the record reflecting potential evidence tampering. That is, one officer instructed another to change his statement about his prior

interaction with Larkin's wife. There is also evidence that a piece of physical evidence, the safe containing the gun used to shoot Stacey, was tampered with while in the State's custody and prior to allowing Larkin an opportunity to examine it.

It is especially troubling to this Court that one of the prosecuting attorneys involved in this matter was also involved in the misconduct in *Taylor*. However, the discipline of attorneys is a separate matter than the matter at hand. As we noted in *Taylor*: "what constitutes an effective *remedy* for [defendant] is not necessarily what would constitute a proportionate *punishment* for the State. Our concern is to ensure the State's egregious misconduct does not actually prejudice [defendant]. . . ." *Taylor* at 1024. Accordingly, here we must decide whether the State's misconduct is so severe that Larkin's criminal charges should be dismissed over it. Balancing Larkin's rights with the public's interest in seeking justice for victims and applying our precedent, we find that outright dismissal is not the appropriate remedy in this case.

## B. The appropriate remedy for the State's misconduct is suppression of the tainted evidence for which the State cannot rebut the presumption of prejudice pursuant to *Taylor*.

In *Taylor*, when considering a motion to suppress, this Court announced a rule that when the State eavesdrops on a defendant's privileged communications with counsel, there arises a rebuttable presumption of prejudice. This Court instructed the State may rebut that presumption only by proof beyond a reasonable doubt. 49 N.E.3d at 1019. We noted that it would be a windfall to Taylor if all statements were suppressed because this would be disproportionate to the prejudice Taylor actually suffered. *Id.* at 1029. We further noted that there may be other circumstances where the taint would be so pervasive and insidious that no remedy short of barring the tainted witnesses would suffice but we did not address "that larger question" at that time. *Id. Taylor* considered a motion to suppress only and not a motion to dismiss.

Larkin argues, and the Court of Appeals found that the prosecutorial misconduct in this case is more severe than in *Taylor* and thus, *Taylor* does not apply. That is, they argue that *Taylor* only involved eavesdropping[1] whereas here, the misconduct did not end there. Judge Barnes disagreed with the majority, believing the facts in *Taylor* were not so much more egregious than the ones here as to require dismissal.

However, even acknowledging that the prosecutorial misconduct may be worse here, we find *Taylor* is applicable to this case, and as such, outright dismissal is not an appropriate remedy. Pursuant to *Taylor*, the State must be given a chance (even though it may not be possible) to demonstrate by proof beyond a reasonable doubt that some untainted and admissible evidence exists. Further, *Taylor* does not require that the State make an offer of proof in order to rebut the presumption of prejudice.

The trial court already suppressed statements made by Larkin after he invoked his right to counsel when the police continued to question him as well as his recorded conversation with his attorney. Testimony or portions of testimony from certain officers may also need to be suppressed and the safe may need to be excluded from evidence. However, the State cites other evidence which may not be tainted at all. For instance, Larkin's 911 call, a physical description of the shooting scene, pathologist testimony and Larkin's statement to police may be used to bring Larkin to trial. The trial court will need to look at each piece of evidence and testimony and determine first, whether it is tainted and next, if so, whether the State can rebut prejudice beyond a reasonable doubt.

Finally, we note again that *Taylor* involved blanket suppression and not a motion to dismiss. Dismissal is an extreme remedy. As the U.S. Supreme Court has held, for constitutional violations committed by the government, "the remedy characteristically imposed is not to dismiss the

---

[1] *Taylor* involved more than eavesdropping as well. After eavesdropping, police used information gained from what they overheard to go find the murder weapon. Further, police invoked their Fifth Amendment rights during their depositions when Taylor sought to learn the extent of the prejudice from the eavesdropping.

indictment but to suppress the evidence" gained from the violation. *U.S. v. Morrison*, 449 U.S. 361, 365 (1981). To the extent the prosecutorial misconduct in this case has caused prejudice which the State cannot rebut beyond a reasonable doubt, the appropriate remedy is suppression of the tainted evidence, not outright dismissal without taking into account other untainted evidence or giving the State an opportunity to rebut the presumption of prejudice. It may be that the State has no case without the suppressed evidence. Regardless, the trial court abused its discretion in not applying *Taylor* to this case.

## Conclusion

We find that the delays associated with Larkin's interlocutory appeal and motion for change of judge are chargeable to Larkin. As such, the Criminal Rule 4(C) period had not expired before Larkin agreed to a June 2016 trial date. Thus, his motion for discharge should have been denied.

We further find that *Taylor* applies to this case and outright dismissal is not the appropriate remedy for the State's misconduct. Instead, the trial court is to assess each piece of evidence to determine whether it is tainted by the State's misconduct. If it is, the State shall be afforded the opportunity to rebut the presumption of prejudice by proof beyond a reasonable doubt. Failing that, the testimony or evidence at issue will be suppressed.

Accordingly, we reverse the trial court on both issues and remand. The trial court, at its discretion, may either hold a hearing during which the State is given an opportunity to rebut the presumption of prejudice for any tainted evidence or proceed to trial at which the State may attempt to meet its burden through offers of proof outside the presence of the jury.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Chief Counsel

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Stacy R. Uliana
James E. Foster
Bargersville, Indiana