# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 04 2019, 7:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Vaylan Keishaughn Glazebrook,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 4, 2019

Court of Appeals Case No.
18A-CR-1269

Appeal from the Monroe Circuit Court

The Honorable Marc R. Kellams, Judge

Trial Court Cause No.
53C02-1411-F1-1066

**Baker, Judge.**

[1] Vaylan Glazebrook appeals his convictions for Level 1 Felony Attempted Murder;[1] seven counts of Level 1 Felony Rape;[2] Level 2 Felony Burglary;[3] two counts of Level 3 Felony Armed Robbery;[4] two counts of Level 3 Felony Criminal Confinement;[5] and Level 6 Felony Resisting Law Enforcement.[6] He raises the following arguments: (1) his right to a speedy trial under Criminal Rule 4 was violated; (2) the trial court overstepped its authority during plea negotiations; (3) the evidence is insufficient to support the attempted murder conviction; and (4) the sentence is inappropriate in light of the nature of the offenses and his character. Finding no error and sufficient evidence and that the sentence is not inappropriate, we affirm.

## Facts

[2] In November 2014, S.E., A.R., and K.H. were roommates and students at Indiana University in Bloomington. They shared an apartment and each woman had her own bedroom.

[3] In the early morning hours of November 9, 2014, a noise woke up S.E. and A.R. S.E. turned over in bed "and saw a man standing in [her] door with a gun

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-1.

[2] I.C. § 35-42-4-1.

[3] Ind. Code § 35-43-2-1.

[4] I.C. § 35-42-5-1.

[5] I.C. § 35-42-3-3.

[6] Ind. Code § 35-44.1-3-1.

pointed at [her]." Tr. Vol. III p. 80. There was a different man in A.R.'s room. The man in S.E.'s room was later identified as Glazebrook; the man in A.R.'s room was later identified as Michael Deweese.

[4] Glazebrook rummaged through S.E.'s things, taking her cell phone and money from her nightstand. In A.R.'s room, Deweese made A.R. get on the floor and forced her to perform fellatio on him. Deweese then brought A.R. into S.E.'s bedroom. Deweese grabbed S.E. by the ankles, pulled her to the edge of the bed, pulled down her pants, and raped her. Deweese then forced S.E. to perform fellatio on him twice. Next, he inserted his penis in her anus and then forced her to perform fellatio again. Deweese pointed a gun at S.E. throughout the encounter.

[5] Glazebrook taunted A.R., telling her that he was going to do the same thing to her. He dragged her off the bed, ripped her pants off, inserted his fingers into A.R.'s vagina in a rough manner, inserted his penis in her vagina, and forced her to perform fellatio on him. Glazebrook tried, but was unable, to insert his penis into A.R.'s anus; he made her spit on his penis until he was able to insert it. Glazebrook pointed a gun at A.R. throughout the encounter.

[6] Sometime during these events, and unknown to S.E. and A.R., their third roommate, K.H., had called the police. Bloomington City Police Officer Bill Abram responded. After arriving, Officer Abram observed that the door to the apartment was damaged and open. When Officer Abram looked inside, he saw Deweese in the hallway, pulling up his pants. Officer Abram moved to a corner

of the building, called for backup, and saw Glazebrook and Deweese flee out of a side window.

[7] As Glazebrook and Deweese fled, Glazebrook turned around, aimed, and fired at Officer Abram. One bullet hit Officer Abram between his left arm and vest.[7] Officer Abram fired twice, striking Glazebrook and Deweese. Although the two men continued to flee, they were eventually apprehended and transported to the hospital for treatment.

[8] On November 12, 2014, the State charged Glazebrook with Level 1 felony attempted murder, seven counts of Level 1 felony rape, Level 2 felony burglary, two counts of Level 3 felony armed robbery, three counts of Level 3 felony criminal confinement,[8] and Level 6 felony resisting law enforcement. At Glazebrook's November 12, 2014, initial hearing, the trial court appointed a public defender to represent him. Over the next several years, multiple continuances were sought and granted; all were either filed by Glazebrook's attorney or joint requests with the State. Specifically, continuances were asked for and granted on March 31, July 23, October 5, November 3, and November 30, 2015; and March 31, April 28, June 23, and October 18, 2016.

---

[7] Officer Abram was not injured, and it is not clear whether the bullet grazed his vest or missed him altogether. He described feeling "a pressure or a tightness that moved" underneath his armpit and believing that he had been hit, but apparently after other officers checked, it was determined that he had not sustained any injuries. Tr. Vol. III p. 151.

[8] The State later dismissed one of the criminal confinement charges.

[9]     At a September 12, 2017, pretrial hearing, Glazebrook's attorney again requested a continuance. Glazebrook agreed to the continuance and accepted a beginning trial date of February 12, 2018. On November 6, 2017, Glazebrook wrote a pro se letter to the trial court requesting relief under Indiana Criminal Rule 4; the trial court later struck the motion because Glazebrook was represented by counsel. At some point before the jury trial, plea negotiations took place, but were ultimately not fruitful.

[10]    Glazebrook's jury trial took place from February 12 through February 16, 2018. The jury found Glazebrook guilty as charged.[9] The jury then deliberated on the enhancement of criminal confinement based on Glazebrook's use of a firearm; it found that the State had established the facts necessary for enhancement.

[11]    On April 16, 2018, the trial court sentenced Glazebrook as follows:

- 30 years for attempted murder.
- 30 years for each of the seven rape convictions, to be served concurrently to one another but consecutively to the attempted murder sentence.
- 22.5 years for burglary, to be served consecutively.
- 16 years on each of the two armed robbery convictions, to be served concurrently to each other but consecutively to the other sentences.
- 12 years for the two criminal confinement convictions; one of those convictions was further enhanced for the firearm use. The 12-year

---

[9] Initially, the jury found Glazebrook guilty of both attempted murder and the lesser-included offense of criminal recklessness. The trial court explained to the jury that it could either find Glazebrook not guilty, guilty of attempted murder, *or* guilty of criminal recklessness. Without objection, the trial court advised the jury to retire again and return with a verdict on either attempted murder or criminal recklessness, but not both. The jury did not have any questions. After re-deliberating, the jury found Glazebrook guilty of attempted murder.

portions of the sentences are to be served concurrently with the robbery conviction but consecutively to the attempted murder, rape, and burglary sentences; the 15-year enhancement is to be served consecutively.

- 2 years for resisting law enforcement, to be served concurrently with the attempted murder conviction.

The aggregate sentence imposed by the trial court, therefore, is over 100 years[10] executed in the Department of Correction. Glazebrook now appeals.

# Discussion and Decision

# I. Speedy Trial

[12] Glazebrook first argues that we should reverse because his right to a speedy trial was violated. Indiana Criminal Rule 4(C) provides that a defendant may not be held to answer a criminal charge for more than one year unless the delay is caused by the defendant, an emergency, or court congestion. *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011). We will reverse a trial court's ruling on a Criminal Rule 4(C) motion to dismiss only if the trial court's decision is clearly

---

[10] There is disagreement between the parties as to the aggregate length of the sentence. Glazebrook states that it is 139.5 years and the State maintains that it is 125.5 years. Our math yields yet a third total aggregate amount of 113.5 years (30 years for attempted murder + 30 years for rape + 22.5 years for burglary + 16 years for armed robbery + 15 years for the criminal confinement enhancement). The State includes in its total the 12-year criminal confinement sentence. The trial court's order is somewhat unclear, as this sentence is ordered to be served concurrently with the armed robbery sentence, in which case it would be subsumed into the 16-year term, but also to be served consecutively to the other sentences, in which case it would be added on. We need not resolve this issue today, however, as it will be sufficient for the purpose of determining the appropriateness of the sentence to know that the aggregate term is well over 100 years imprisonment.

against the logic and effect of the facts and circumstances before it. *Bowman v. State*, 884 N.E.2d 917, 919 (Ind. Ct. App. 2008).

[13] Here, Glazebrook agreed to the trial date of February 12, 2018. Therefore, he has waived this argument. *E.g.*, *Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind. 1999) (if a trial date is set outside the one-year period and defendant does not object, he waives his right to invoke Criminal Rule 4(C)).[11]

[14] Waiver notwithstanding, Glazebrook asked for all continuances before the trial, either asking for them personally or in joint agreement with the State. *See State v. Larkin*, 100 N.E.3d 700, 704 (Ind. 2018) (holding that a defendant extends the one-year period by seeking or acquiescing in delay resulting in a later trial date). Here, there was a total of 1,188 days between the date on which Glazebrook was charged and the date on which his trial began. Glazebrook requested 14 continuances that totaled 992 days, meaning that only 196 days of the one-year period have expired.[12] Therefore, no speedy trial violation occurred and Glazebrook is not entitled to relief on this issue.

## II. Plea Negotiations

[15] Next, Glazebrook argues that the trial court impermissibly stepped into plea negotiations and effectively prevented a plea agreement from being reached.

---

[11] At some point after agreeing to the trial date, Glazebrook filed a pro se motion for discharge under Criminal Rule 4(C). This filing had no effect because "[a] defendant speaks through his attorney . . . ." *Epps v. State*, 244 Ind. 515, 524, 192 N.E.2d 459, 464 (1963).

[12] There is no indication in the record that the requested continuances were unnecessary or excessive.

Because Glazebrook did not object below, he must establish fundamental error to succeed on this issue. Fundamental error is an extremely narrow exception that applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006).

[16] Here, during the final pretrial hearing before trial, the following discussion took place:

| Court: | My, my final question then is is there still an offer on the table? |
| --- | --- |
| State: | And I know, this is something that [another attorney for the State] and I haven't talked about. I, I guess - |
| Court: | —okay— |
| State: | —we just assumed that, um, at this point Mister Glazebrook wasn't willing to take— |
| Court: | —I want a deadline. I don't want to be talking about it Monday morning. |
| State: | I didn't even, maybe you can tell us right now if there's any. |

Co-counsel for Glazebrook:    I think it's highly unlikely, um, but get us, I guess, your, your offer by Thursday?

State:    I mean, it wouldn't differ, but, I mean, from what it's already been, but it's just a matter of whether you—

Co-Counsel for Glazebrook:    —to where sixty—

State:    Five, I think.

Court:    Seventy.

Co-Counsel for Glazebrook:    Seventy.

State:    I, I think sixty-five was—

\*\*\*

Court:    Is that where we were to begin with and you withdrew it?

\*\*\*

State:    —I think we were at seventy—

Counsel for Glazebrook:    —it's kind of gone both ways, yeah.

State:    Yeah. I think we were last at sixty-five, but if the Court's saying that it wouldn't take less than seventy—

Court:      —well, of course I'd have to consider it on its merits entirely.

Tr. Vol. I p. 83-84. Glazebrook argues that in this discussion, the trial court communicated to the parties that it would not accept anything less than a seventy-year sentence and that this allegedly improper statement effectively prevented a plea agreement from being reached.

[17]   Initially, we note that it is not at all clear that the trial court was, in fact, stating that it would not accept anything less than seventy years. It appears that the attorneys and the trial court were instead trying, collectively, to remember the point at which the plea negotiations had previously broken down, with some confusion and disagreement as to whether the State had offered sixty-five or seventy years in its prior offer.

[18]   But even if we accept for argument's sake that Glazebrook's interpretation of the transcript is correct, a trial court "may offer guidance as to what sentence it might find marginally acceptable." *Ellis v. State*, 744 N.E.2d 425, 430 (Ind. 2001). As the trial court was permitted to offer guidance and also plainly and clearly stated that it would consider any plea agreement reached by the parties, it is apparent that the process was fair and reasonable. In sum, we find no error, fundamental or otherwise.

## III.  Sufficiency

[19]   Next, Glazebrook argues that the evidence is insufficient to support his attempted murder conviction. When reviewing the sufficiency of the evidence

to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

[20] To convict Glazebrook of Level 1 felony attempted murder, the State was required to prove beyond a reasonable doubt that he engaged in conduct that constituted a substantial step toward intentionally killing Officer Abram. I.C. §§ 35-42-1-1, 35-41-5-1.

[21] Glazebrook's arguments on sufficiency are not entirely clear, but we infer that he maintains that he acted recklessly, rather than intentionally, and that the evidence does not prove beyond a reasonable doubt that he was the person who shot the officer.

[22] The record reveals that Glazebrook was fleeing from Officer Abram. Glazebrook reached over his shoulder, aimed, and fired his handgun directly at the officer, hitting Officer Abram between the left side of his chest and his vest. Intent to kill may be inferred "from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury." *Henley v. State*, 881 N.E.2d 639,

652 (Ind. 2008). A reasonable factfinder could conclude from this series of events that Glazebrook intended to kill Officer Abram.[13]

[23] As to Glazebrook's identity, Officer Abram unequivocally identified Glazebrook as the shooter. He described what Glazebrook was wearing and Glazebrook's physical features. Tr. Vol. III p. 151-52. The jury also viewed Officer Abram's body camera video. *Id.* at 158-59. This evidence is sufficient to establish that Glazebrook was the person who shot at Officer Abram. In sum, the evidence is sufficient to support Glazebrook's conviction for attempted murder.

## IV. Sentence

[24] Finally, Glazebrook argues that the sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v.*

---

[13] To the extent that Glazebrook argues that the initial jury verdict, which found him guilty of both attempted murder and the lesser-included offense of criminal recklessness, muddies the waters regarding intent, we cannot agree. The trial court explained the rules to the jury and sent it back to re-deliberate. The jury then returned its verdict of guilty of attempted murder. The jurors did not have any questions; therefore, we infer that they were simply mistaken in the first verdict and corrected the error in the second. This does not affect our analysis of the evidence regarding Glazebrook's intent.

*State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[25]    Glazebrook faced the following possible sentences for his convictions:

- For the Level 1 felony attempted murder conviction and the seven Level 1 felony rape convictions, Glazebrook faced a sentence of twenty to fifty years, with an advisory term of thirty years. Ind. Code § 35-50-2-4. The trial court imposed thirty-year terms on each of the eight Level 1 felony convictions, with two to run consecutively and the remainder to run concurrently.

- For the Level 2 felony burglary conviction, Glazebrook faced a sentence of ten to thirty years, with an advisory term of seventeen and one-half years. I.C. § 35-50-2-4.5. He received a 22.5-year sentence for this conviction.

- For the two Level 3 felony armed robbery convictions, Glazebrook faced a term of six to twenty years, with an advisory term of ten years. I.C. § 35-50-2-5. The trial court imposed a sixteen-year term.

- For the two Level 3 felony criminal confinement convictions, Glazebrook faced the same possible sentence as that for armed robbery. The trial court imposed two twelve-year terms, with one of those terms being enhanced by fifteen years based on his use of a firearm.

- For the Level 6 felony resisting arrest conviction, Glazebrook faced a term of six months to three years, with an advisory term of one and one-half years. I.C. § 35-50-2-7. The trial court imposed a two-year term.

The aggregate sentence imposed by the trial court totals well over 100 years imprisonment. As noted by Glazebrook, even for this relatively young nineteen-year-old man, this may very well amount to a sentence of life in prison.

[26] The nature of these offenses is truly heinous. Glazebrook and Deweese broke into an apartment in the middle of the night, awakening the residents from sleep and sending them into a nightmare. It may be that the initial purpose of the break-in was theft, but the encounter quickly turned far darker. The two men brutally raped and violated the two young women at gunpoint. Then, when police arrived at the scene, Glazebrook shot Officer Abram, and only by virtue of luck and a bullet proof vest did the officer survive unscathed. It is not difficult to assume that these two young women are traumatized by these events and will continue to feel the ramifications for years to come, if not for the rest of their lives.

[27] Glazebrook notes that he is a young man with an unremarkable juvenile history, which is true. We note, however, that he was on probation for possession of marijuana at the time he committed these crimes. And while incarcerated, Glazebrook has consistently broken the rules, rarely going more than six months without being written up. He is considered to be a very high risk to reoffend.

[28] Furthermore, these crimes are not merely the result of questionable youthful decisionmaking. Even at the young age of nineteen, Glazebrook had the desire and wherewithal to burglarize a home in the middle of the night—when it had to have been assumed that the residents would be at home—and then repeatedly and brutally rape and violate the young women inside, for no reason whatsoever.

[29] The trial court carefully considered each offense separately and arrived at totals that are fair and reasonable. We do not find the sentence imposed by the trial court to be inappropriate in light of the nature of the offenses or Glazebrook's character.

[30] The judgment of the trial court is affirmed.

Robb, J., and Tavitas, J., concur.