FILED

Jun 02 2023, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thang C. Bik,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

June 2, 2023

Court of Appeals Case No.
22A-CR-1932

Appeal from the Marion Superior
Court
The Honorable Jose D. Salinas,
Judge

The Honorable Ronnie Huerta,
Magistrate

Trial Court Cause No.
49D23-2103-F6-7860

**Opinion by Judge Weissmann**
Judge Brown concurs and
Judge Bailey dissents with a separate opinion.

**Weissmann, Judge.**

[1] Charged with three alcohol-related driving offenses, Thang Bik asked the trial court for seven consecutive pretrial conferences due to communication issues with his attorney. When those issues were finally resolved, Bik requested two additional pretrial conferences because the State had not yet provided the results of a blood test to which Bik submitted on the night of his arrest. Nearly 400 days after he was charged, Bik moved for discharge under Indiana Criminal Rule 4(C), arguing that the State failed to bring him to trial within one year.

[2] The trial court denied Bik discharge, attributing to him the delay because he requested the continuances that effected it. On interlocutory appeal, Bik claims the State caused the delay by failing to produce his blood test results in a timely manner. But only two of Bik's continuance requests were based on that outstanding discovery. The other seven were based on Bik's communication issues with his attorney; thus, the resulting delays were properly attributed to Bik. Finding the State was well within Criminal Rule 4(C)'s one-year deadline when Bik filed his motion for discharge, we affirm.

## Facts

[3] Bik submitted to a blood draw following his arrest for operating a vehicle while intoxicated (OWI). The next day, March 15, 2021, the State charged Bik with three alcohol-related offenses, including operating a vehicle with an "alcohol concentration equivalent" of 0.15 grams or more. Ind. Code § 9-30-5-1(b). The

State also alleged that Bik had a prior OWI conviction, which enhanced the three charges to Class D felonies. Ind. Code § 9-30-5-3(a).

[4] Bik speaks Burmese Hakka-Chin and required a translator throughout the trial court proceedings. He failed to appear for his initial hearing on March 29, 2021. At a rescheduled hearing on April 19, the trial court entered a plea of not guilty and appointed Bik a public defender. Though a specific attorney within the public defender agency was assigned to Bik's case, substitute counsel covered Bik's first nine pretrial conferences.

[5] During the first seven of these conferences, substitute counsel simply requested another pretrial conference as follows:

**May 3**

"Judge, this is a new case, so we're asking for a Pretrial in due course. And we would like to do a contact exchange today." *Id.* at 11.

**June 14**

"Your Honor, at this time, we would just be requesting a Pretrial Conference in due course so we can get Mr. Bik and [assigned counsel] on the same page." *Id.* at 17.

**July 26**

"Your Honor, we're just asking for a pretrial in due course, and we would like to schedule an interpreter meeting with Mr. [Bik], here." *Id.* at 23.

**September 13**

"Judge, this is [assigned counsel's] case. They did have a meeting with an interpreter, uhm, the client didn't show up, so we just need to reschedule that. We just need a pretrial in due course to handle that business." *Id.* at 29.

### October 18

"Judge, [assigned counsel] has been trying to set up a time uhm with Mr. Bik with an interpreter, uhm, still working on that. Just asking for a pretrial, not a trial, today." *Id.* at 3

### November 8

"Judge, we're requesting another Pretrial Conference in-person." *Id.* at 40.

### December 20

"Judge, this is [assigned counsel's] old case. I have given him [another public defender's] information to see who the new assigned attorney will be. We're just asking for a pretrial in due course." *Id.* at 45.

[6]     Neither party ever requested a trial date. By Bik's eighth pretrial conference on January 31, 2022, his case had been reassigned to another attorney within the public defender agency. Still, substitute counsel appeared and requested another pretrial conference as follows:

> Judge, this is [reassigned counsel's] case. She sent me some notes indicating that she has great contact through our interpreter, uhm, *waiting on labs*. They have an interpreter call setup, a meeting, on Friday. So, we just need a pretrial thereafter.

*Id.* at 50 (emphasis added). Likewise, at Bik's ninth pretrial conference on March 14, 2022, substitute counsel stated: "Judge, [assigned counsel] has . . . *requested laboratories and she's waiting on those*. She is just requesting another pretrial, not a trial, today." *Id.* at 55 (emphasis added).

[7]     On April 18, 2022, the parties appeared for a tenth pretrial conference, during which Bik's assigned counsel advised the trial court that Bik was still awaiting

his blood test results. Later that day—398 days after Bik was charged—Bik filed a motion for discharge under Indiana Criminal Rule 4(C), arguing that the State failed to bring him to trial within one year. The State received Bik's blood test results from its laboratory two days later.

[8] At the discharge hearing, the trial court recognized that the State had an affirmative duty to provide Bik with his blood test results under local rules.[1] The court, however, characterized Bik's decision to request pretrial conferences, rather than a trial date, as "trial strategy." Tr. Vol. II, p. 81. Ultimately, the trial court attributed the delay to Bik, denied his motion for discharge under Criminal Rule 4(C), and certified the denial for interlocutory appeal.

[9] In its certification order, the trial court specifically identified the following issue for appellate review:

> Whether credit time (sic) should be counted for criminal rule 4 (CR4) purposes under the following factual basis:
>
> a. The Court asked the Defense on the record during various pre-trial conferences if they are requesting a trial date (bench or jury) in the pending criminal case. The Defense informed the Court that they were not requesting a trial date (bench or jury) because of outstanding discovery.

---

[1] LR49-CR00-107(a) provides, in pertinent part: "The State shall disclose the following material and information within its possession or control: . . . (4) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons."

b. The Defense had requested specific discovery from the State on various occasions (but no motion to compel was ever requested by the Defense). Eventually, the State provided the discovery but gave no reason as to the delay and did not provide the discovery until a substantial amount of time had elapsed in the age of the case.

App. Vol. II., p. 69.

## Discussion and Decision

As an initial matter, we observe that Indiana Appellate Rule 14(B) permits appeals from "interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." Though it is often helpful if the trial court identifies specific questions of law raised by its interlocutory order, "[t]he language of Rule 14(B) clearly identifies certification of an order, not of specific issues or questions." *State v. Keller*, 845 N.E.2d 154, 160 (Ind. Ct. App. 2006) (citing *Budden v. Bd. of Sch. Comm'rs*, 698 N.E.2d 1157, 1166 n.14 (Ind. 1998)). Thus, appellate courts are under "no obligation to accept the issue as framed by the trial court or to answer it." *Id.*

We view the issue presented by Bik's interlocutory appeal more broadly than the trial court specified in its certification order. We therefore reframe the issue simply as whether the trial court erred in denying Bik's motion for discharge under Indiana Criminal Rule 4(C).

Criminal Rule 4(C) "places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested, but allows for

extensions of that time for various reasons." *Cook v. State*, 810 N.E.2d 1064, 1065 (Ind. 2004). The rule specifically states:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar . . . .

Ind. Crim. Rule 4(C). "[I]f a delay is caused by the defendant's own motion or action, the one-year time limit is extended accordingly." *Cook*, 810 N.E.2d at 1066.

[13]    Under Criminal Rule 4(C), a defendant generally is chargeable with a delay effected by his own motion for a continuance. *State ex rel. O'Donnell v. Cass Super. Ct.*, 468 N.E.2d 209, 210 (Ind. 1984). However, our appellate courts have recognized a "discovery exception" to this general rule. *Wellman v. State*, 22A-CR-01673, slip op. at 6 (Ind. Ct. App. May 10, 2023) (citing *Carr v. State*, 934 N.E.2d 1096, 1101 (Ind. 2010)). "When a trial court grants a defendant's motion for continuance because of the State's failure to comply with the defendant's discovery requests, the resulting delay is not chargeable to the defendant." *Carr*, 934 N.E.2d at 1101; *see also Stephenson v. State*, 742 N.E.2d 463, 488 (Ind. 2001).

[14] There is no dispute that Bik requested the continuances that pushed his case past Criminal Rule 4(C)'s one-year deadline. Citing the discovery exception, Bik claims these continuances were not attributable to him because "[t]hey were the direct result of the State's failure to produce the blood test results in a timely fashion." Appellant's Br., p. 13.

[15] This Court has applied the discovery exception in several cases in which a defendant requested a continuance due to the State's failure to provide test results it had not yet received from a state laboratory. *See Wellman*, slip op. at 8. But in each of these cases, the defendant specifically cited the State's outstanding discovery as the basis for the requested continuance. In *Wellman*, for example, an OWI defendant requested eight consecutive pretrial conferences, each time specifying that he was still awaiting blood test "labs" or "lab results" from the State. *Wellman*, slip op. at 3.

[16] Unlike the defendant in *Wellman*, Bik cited the State's outstanding "labs" or "laboratories" as the basis for only two of his nine continuance requests. Tr. Vol. II, pp. 50, 55. Bik based his other seven requests on communication issues with his attorney; thus, the resulting continuances were not covered by the discovery exception. *Cf. Wellman*, slip op. at 12 ("Because Wellman's continuances were based on the State's failure to produce his blood test results, the 396-day delay effected by those continuances was not attributable to Wellman.").

[17] We attribute to Bik the delay effected by his seven non-discovery-related continuances, which we calculate as the 273 days between the first pretrial conference on May 3, 2021, and the eighth pretrial conference on January 31, 2022. Bik also concedes that he should be attributed the 21-day delay between his missed initial hearing on March 29, 2021, and his rescheduled hearing on April 19, 2021. Thus, the State was well within Criminal Rule 4(C)'s one-year deadline when Bik filed his motion for discharge.[2]

[18] Concluding Bik was not entitled to discharge under Criminal Rule 4(C), we affirm the trial court's judgment and remand for further proceedings.

Judge Brown concurs.
Judge Bailey dissents with a separate opinion.

---

[2] We do not attribute to Bik, however, the 14 days between the filing of charges on March 15, 2021, and the missed initial hearing on March 29, 2021; the 14 days between the rescheduled initial hearing on April 19, 2021, and the first pretrial conference on May 3, 2021; or the 76 days between the eighth pretrial conference on January 31, 2022, and the filing of Bik's motion for discharge on April 18, 2022. The latter 76 days fall under the discovery exception. *See Wellman*, slip op. at 12.

**Bailey, Judge, dissenting.**

[19] I respectfully dissent. At the hearing on motion for discharge, the State agreed with Bik that the trial court was tasked with making a calculation of time attributable to discovery delay, and the interlocutory order on appeal addresses only discovery delay. I am not persuaded that we can comb through the record to find an alternative basis for delay, in light of our standard of review. That is,

> When evaluating a Criminal Rule 4 motion for discharge, "in cases where the issue is a question of law applied to undisputed facts, the standard of review—like for all questions of law—is de novo." *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013). However, in cases where a trial court makes a factual finding of congestion or emergency based on disputed facts, the standard of review for appellate courts is not abuse of discretion, but the clearly erroneous standard. *Id.* at 1040.

> We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017). A trial court abuses its discretion when it misinterprets the law. *Id.*

*State v. Larkin*, 100 N.E.3d 700, 703 (Ind. 2018).

[20] And should we comb the record for alternative bases, "[d]elay caused by a change of counsel will be charged to the defendant only where actual delay results." *Biggs v. State*, 546 N.E.2d 1271, 1275 (Ind. Ct. App. 1989). Here, it was apparent from the April 19, 2021, initial hearing that the State had no blood test results. None were forthcoming, even as Bik encountered communication difficulties with his defense team. With that background, the

trial court made a factual determination as to Bik's motivation: "The Defense informed the Court that they were not requesting a trial date (bench or jury) because of outstanding discovery." Appealed Order at 1. The trial court made a determination that the root cause of delay was the absence of discovery. I cannot conclude that the trial court misinterpreted the law or clearly erred in its fact-finding.

[21] To be sure, Bik could have requested a speedy trial without having received discovery from the State. But that is an untenable position for a defendant when the State has simply failed to marshal its proof. "To put the defendants in a position whereby they must either go to trial unprepared due to the State's failure to respond to discovery requests or be prepared to waive their rights to a speedy trial, is to put the defendants in an untenable situation." *Biggs*, 546 N.E.2d at 1275. Time after time, as the parties appeared at status conferences with no lab results or trial date in sight, the trial court asked Bik what he wanted. Bik's counsel and successive counsel studiously avoided explicit requests for continuances; counsel clarified that the defense was not requesting a trial setting; and counsel acknowledged that pretrial hearings would ensue. I am not persuaded that a defendant is required to do more to avoid having time charged to him when it is evident that the State is unprepared to take him to trial.

[22] At the hearing on motion for discharge, the State put its cards on the table. When the trial court asked the prosecuting attorney: "Do you have the labs," she responded: No, Judge. But if we set it for trial, I can get the labs within a

week." (Tr. Vol. II, pg. 83.)[3] The application of Criminal Rule 4 should not distill to gamesmanship. The pertinent inquiry is whether there was "delay [other than nineteen days] caused by [Bik's] act?" Crim. R. 4(C). In my opinion, there was not, and Bik is entitled to discharge.

---

[3] Apparently, the State had been provided with blood test results. On April 20, 2022, the State filed its notice of results and motion for license suspension.